UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                  :

COURTENAY COMMUNICATIONS CORP.,  :

            Plaintiff,  :

      -against-  :  01 Civ. 2228 (LMM)
                       :  <u>MEMORANDUM AND</u>
                       :  <u>ORDER</u>
PATRICIA M. HALL and HALLMARK  :
CAPITAL CORP.,  :

          Defendants.  :
                       :
-----------------------------------X

McKENNA, D.J.

    Before the Court are cross-motions for summary judgment submitted by Plaintiff Courtenay Communications Corporation ("Plaintiff" or "Courtenay") and Defendants Patricia M. Hall and Hallmark Capital Corporation ("Defendants" or "Hallmark").  For the following reasons, Plaintiff's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I. Background

### A. Factual Background

    In 1998, Plaintiff Courtenay, a publisher and seller of trade newspapers, entered into an arrangement with

Defendant Hallmark Capital Corporation, of which Defendant Patricia M. Hall is the "sole Managing Director, President, Secretary, and shareholder," under which Hallmark would provide "financial consulting, investment banking, and other services to Plaintiff in exchange for certain fees." (Defs.' Statement of Undisputed Facts ("Defs.' Statement") ¶¶ 1-2, 4-5.)  This arrangement was governed by two written agreements dated February 9, 1998, and April 29, 1998. (Joint Appendix[1] ("J.A.") 59-50; 68.)  During the course of 1998, Plaintiff provided Defendant Hallmark with copies of various internal documents, and, as the relationship between the parties deteriorated, Defendant Hallmark made certain tape recordings of Plaintiff and its employees in order to, in Hall's words, "document what was happening." (J.A. 183.)  The parties terminated their arrangement in late 1998.  While the reasons for the termination are disputed and are not relevant to this litigation, the nature of the subsequent relationship between the two parties has been undisputedly acrimonious.

In 1999, Plaintiff Courtenay launched a publication entitled "iMarketing News," a product which Hallmark had

---

[1] Plaintiff's Rule 56.1 Statement included a copy of the Joint Appendix that the parties submitted to the Court of Appeals in conjunction with a 2003 appeal of this Court's decision granting Defendant's motion to dismiss.  The Court follows the practice of both parties in also referencing this appendix.

played a role in developing during the course of its
relationship with Plaintiff in 1998.  (Defs.' Statement ¶
9.)  The "iMarketing News" publication includes what
Plaintiff alleges to be a protected trademark: the words
"iMarketing News" where the letter "i" is red and lowercase
and the remaining "Marketing News" is black and in the
Times New Roman small caps font; in addition, a yellow
circle is superimposed over the red "i" and part of the "M"
(the "Alleged Mark"). (J.A. 70.)  Plaintiff has not
registered or attempted to register the Alleged Mark.
(Defs.' Statement ¶ 12.)

     In October 1999, Defendant Hallmark began displaying
Plaintiff's Alleged Mark on its website,
www.hallmarkcapital.com, under the website's "What's New"
heading.  According to Defendants, the purpose of
displaying the Alleged Mark was to "give notice of the
project as an example of its work for potential clients."
(Defs.' Statement ¶ 13.)  Immediately to the right of the
Alleged Mark on the "What's New" page was text stating that
Hallmark had acted as the "exclusive financial advisor in
connection with the launch of iMarketing News" on behalf of
its "trade newspaper publishing parent."  (J.A. 264.)  This
text included a hyperlink on the words "smartest strategic
move" that, if followed, connected the viewer to another

page on Hallmark's website entitled "Success Stories."  The
Success Stories page consisted of seven blocks of text with
quotations from unidentified executives of unnamed
companies and brief descriptions of the services provided
by Hallmark to those companies.

One of these seven text blocks featured a quotation
attributed to the "President/Owner" of an unidentified
company stating that "Hallmark Capital gave us the No. 2
executive we had been looking for for years and could never
find.  Thanks for making this a better place -- and us
better managers." The accompanying description of the
services provided by Hallmark read:

> A $15 million privately held direct marketing media
> company was poorly managed, unfocused and unprepared
> to take advantage of strategic opportunities.
> Hallmark Capital provided interim COO services for
> eight months, overhauling a weak and ineffective
> corporate infrastructure and creating a strong,
> dynamic operating environment.

(J.A. 279.)  Defendant Hallmark has admitted under oath in
a deposition unrelated to the instant litigation that this
text (the "Alleged Disparaging Remarks") referred to
Plaintiff, but Plaintiff is never identified by name on the
website and the Alleged Mark is not directly linked to the
Alleged Disparaging Remarks.

At some point between 2001 and 2004, Defendant
Hallmark removed the Alleged Mark from its website.

(Defs.' Statement ¶ 26; Pl.'s Mem. in Supp. 10.)   Defendant
Hallmark represents that it removed the Alleged Mark
because it "no longer considered the iMarketing News
transaction to be newsworthy."   (Defs.' Statement ¶ 26.)
The Alleged Disparaging Remarks remain on Defendant
Hallmark's website on the "Success Stories" webpage.


**B. Procedural History**

In February 2001, Plaintiff filed the complaint in
this action alleging false endorsement under Section 43(a)
of the Lanham Act and various violations of New York state
law, including unfair competition, breach of fiduciary
duty, libel *per se*, and conversion.   This Court denied
Plaintiff's motion for a preliminary injunction and
temporary restraining order and granted Defendant
Hallmark's motion to dismiss Plaintiff's claims.   *See
Courtenay Communications Corp. v. Hallmark Capital Corp.*,
No. 01 Civ. 2228 (LMM), 2001 WL 669258 (S.D.N.Y. June 14,
2001) (the "June 2001 Decision").   In the June 2001
Decision, this Court found that the Alleged Mark was
generic and therefore not entitled to Lanham Act protection
and, accordingly, dismissed Plaintiff's Lanham Act claim.
In addition, this Court declined to exercise supplemental
jurisdiction over Plaintiff's state law claims.

The Court of Appeals reversed this Court's June 2001 Decision, holding that the Alleged Mark should be treated as a composite mark and that whether a composite mark "is generic presents an issue of fact that cannot be resolved on the pleadings." *Courtenay Communications Corp. v. Hallmark Capital Corp.*, 334 F.3d 210, 215 (2d Cir. 2003) (the "Second Circuit Decision"). The Court of Appeals instructed that even generic words can constitute legally protected marks when combined "with distinctive lettering, coloring, or other design elements." *Id.* at 216 (citations omitted). In remanding the case, it also noted that "[b]ecause [Courtenay's] mark is unregistered, . . . 'the burden is on the plaintiff to prove that the mark is valid . . . .' and to show that the composite mark is not generic." *Id.* at 217 (internal citation omitted).

## C. The Instant Motion

Plaintiff now moves for summary judgment, seeking a finding that Defendants are liable for damages for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because of their unauthorized use of Plaintiff's Alleged Mark and the false endorsement and false statements concerning Plaintiff on Defendants' website (the "Lanham Act Claim"). (Pl.'s Mem. in Supp. 1.) Plaintiff further

seeks "attorneys' fees, costs, disbursements and other
damages in this action due to defendants' willful
violation" of the Lanham Act; a permanent injunction
requiring Defendants to remove the false endorsement and
false statements from their website; a permanent injunction
prohibiting Defendants from disclosing or otherwise using
Plaintiff's confidential information and requiring that the
information be returned; and fees and related costs "under
the indemnification provisions in the agreements between
the parties." (*Id.* at 2.)  Defendant cross-moves for
summary judgment dismissing all of Plaintiff's claims.
(Defs.' Mem. in Opp. 1.)


## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that
summary judgment should be granted "if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c). "A dispute is not 'genuine' unless
'the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.'" *Nabisco, Inc. v. Warner-*

*Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir. 2004) (quoting *Anderson,* 477 U.S. at 248).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists.  *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). After the moving party has made such a showing, the burden shifts to the nonmoving party to raise a triable issue of fact.  *Anderson*, 477 U.S. at 250.  On a motion for summary judgment, a court must view the record in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**B. Plaintiffs' Trademark Claims**

Plaintiff first argues that it is entitled to summary judgment on its Lanham Act Claim for Defendants' alleged "false endorsement and continuing false representations on their promotional website."  (Pl.'s Mem. in Supp. 11.)

Defendants in turn contend that summary judgment should be granted in their favor dismissing the Lanham Act Claim because Plaintiff has failed to present evidence to create an issue of fact in support of its allegations. (Defs.' Mem. in Opp. 6.)

Under Section 43(a) of the Lanham Act, "a producer of a product or service may initiate a cause of action against a person who uses 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of [the producer's] . . . services." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 153-54 (2d Cir. 2007)(citing 15 U.S.C. § 1125(a)(1)(A)).  In order to succeed on a claim under this section of the Lanham Act, "the plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001); *see also ITC Ltd.*, 482 F.3d at 154.

**1. Whether the Alleged Mark is Protected by the Lanham Act**

While it is clearly established that Section 43(a) of the Lanham Act protects unregistered trademarks, *see Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (1992), when a mark is unregistered "the burden is on the plaintiff to prove

the mark is . . . valid." *Courtenay Comm. Corp. v. Hallmark, Inc.*, 334 F.3d 210, 217 (2d Cir. 2003).  In order to be valid, "a mark must be capable of distinguishing the applicant's goods from those of others."  *Two Pesos*, 505 U.S. at 768.  A mark is "distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Id.*  Distinguishing distinctive marks from generic ones depends in part on how the purchasing public views the mark; it is generic if "in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product." *Courtenay Comm. Corp.*, 334 F.3d at 214 n.2.

As the Second Circuit recognized in the context of this litigation, because the Alleged Mark is unregistered Plaintiff Courtenay bears the burden of proving that it is valid; that is, that it is distinctive rather than generic. *Courtenay Comm. Corp.*, 334 F.3d at 217.  To meet this burden, Plaintiff relies almost entirely on materials submitted to the Court of Appeals in conjunction with Plaintiff's appeal of the June 2001 Decision, including examples of the *iMarketing News* Alleged Mark from Plaintiff's newspaper and representations of the Alleged Mark on Defendants' promotional website.  The record is

devoid of any indication of how the purchasing public views the mark or of whether the mark has acquired secondary meaning.  In essence, Plaintiff has presented no evidence of distinctiveness other than examples of the Alleged Mark itself.

Without presenting such evidence, Plaintiff cannot meet its burden of showing that it is entitled to summary judgment on its Lanham Act claim.  Nonetheless, the Court finds that the evidence Plaintiff has presented regarding the Alleged Mark itself, which consists of black type of the words *iMarketing News* in a particular font superimposed on red and yellow colors linked in a specific design, is sufficient to survive Defendants' cross-motion for summary judgment on the first prong of the Section 43(a) analysis. Such features are sufficiently unique that a finder of fact could determine them to be "inherently distinctive" and thus entitled to Lanham Act protection.  Plaintiff has therefore introduced sufficient evidence to survive Defendant's motion for summary judgment as to the first prong of the Lanham Act analysis.

**2. Whether Plaintiff Has Shown a Likelihood of Confusion**

Under the second prong of the two-stage analysis for claims under Section 43(a) of the Lanham Act, a plaintiff must show that there exists "a likelihood of confusion

between its good and the defendant's."  *Yurman*, 262 F.3d at 115.  Such confusion is not limited to situations where "consumers would believe that the defendant's goods or services are from the same source as those of the plaintiff."  *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). Rather, "[a] defendant may also be liable under the Lanham Act where the defendant's actions are 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association' of the defendant's goods or services with those of the plaintiff."  *Id.* (citation omitted).

     To determine whether a plaintiff has shown a likelihood of confusion, courts in this jurisdiction apply an eight-factor balancing test derived from *Polaroid v. Corp. v. Polarad Elcs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  The *Polaroid* factors are:

> (1) the strength of plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group.

*The Sports Authority*, 89 F.3d at 960 (*citing Polaroid*, 287 F.2d at 495).  Summary judgment should be granted "where

'the undisputed evidence would lead only to one conclusion'
under the *Polaroid* test." *The Sports Authority*, 89 F.3d at
960 (*citing Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d
474, 478 (2d Cir. 1996)).  The Court therefore examines the
evidence submitted by Plaintiff as to each of the eight
*Polaroid* factors to determine whether there is an issue of
material fact for trial.

The first *Polaroid* factor pertains to the strength of
a plaintiff's mark. *The Sports Authority*, 89 F.3d at 960.
As discussed *supra* Section II.B.1.a, Plaintiff has
submitted little evidence regarding the mark itself and how
it is perceived by the public, but what evidence she has
presented indicates a relatively strong mark.  The Court
finds the unique color combination, font, and text of the
Alleged Mark to indicate a relatively distinctive -- and
therefore strong -- composite mark.  The first *Polaroid*
factor therefore weighs in Plaintiff's favor.

The second *Polaroid* factor is the degree of similarity
between a plaintiff's and defendant's marks, which involves
consideration of "two key questions: 1) whether the
similarity between the two marks is likely to cause
confusion and 2) what effect the similarity has upon
prospective purchasers." *The Sports Authority*, 89 F.3d at
962.  It is undisputed that the mark displayed on

Defendants' website is identical to the Alleged Mark, and the Court finds that the similarity between the marks could cause confusion.  But Plaintiff has come forth with no evidence of what effect the similarity had on any member of the public.  In contrast, in *The Sports Authority*, for instance, a plaintiff seeking to survive a defendant's summary judgment motion produced evidence of confusing print and radio advertisements and similar phone book listings.  *Id.* at 962-63.  Plaintiff has provided no comparable evidence by which the Court could gauge whether the similarity between the Alleged Mark and Defendants' use of that mark has affected prospective purchasers.  The Court therefore concludes that the second *Polaroid* factor militates for a finding for Defendants.

The third factor is the proximity of a plaintiff's and defendant's products in the marketplace, *see The Sports Authority*, 89 F.3d at 962, which requires the Court to "consider whether the two products compete with each other."  *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993).  Plaintiff has presented no evidence regarding the relative marketplaces of Plaintiff's and Defendants' products and, as a result, has not met its burden of showing that there is an issue of material fact for trial as to the proximity factor.  The Court finds that

this third factor therefore also weighs in Defendants'
favor.

The fourth factor, bridging the gap, "looks to either
the likelihood that [the plaintiff] will enter [the
defendant's] business or the average customer's perception
of the likelihood that the plaintiff would enter the
defendant's market." *The Sports Authority*, 89 F.3d at 963.
As with the third factor, there is no evidence to indicate
that Plaintiff, a corporation that specializes in the
publication of trade newspapers, is at all likely to enter
Defendants' arena of financial consulting services.
Likewise, Plaintiff has presented no evidence whatsoever of
whether an average customer would perceive such a bridging
of the gap as likely.  This fourth factor therefore also
favors Defendants.

The fifth factor is whether the plaintiff has
presented evidence of actual confusion.  *Id.*  Under the
Lanham Act, "[t]o show actual confusion, [a plaintiff] must
demonstrate that [the defendant's] use 'could inflict
commercial injury in the form of either a diversion of
sales, damage to goodwill, or loss of control over
reputation.'"  *Id.* (citing *Lang v. Retirement Living Pub.
Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991)).  In this
false endorsement claim, Plaintiff is asserting that

Defendants' use of the alleged mark and of the statements attributed to Plaintiff will cause the public to be confused as to whether Plaintiff Courtenay sponsored or endorsed Defendants' services "with a resulting loss of control by [Plaintiff] over how the public perceives . . . the services that [it] provide[s]." *Id.* at 964.  Plaintiff has, however, presented no evidence of actual confusion. The record is devoid of surveys and of any other evidence that would support Plaintiff's contention that members of the public have experienced or will experience confusion over whether Plaintiff has endorsed Defendants' services. The Court recognizes that a plaintiff's failure to produce surveys, although it may constitute "evidence that actual confusion cannot be shown," does not preclude a trier of fact from concluding that actual confusion nonetheless exists.  *Id.* (citation omitted).  For the trier of fact to reach such a conclusion, however, "there [must be] other evidence of actual confusion."  *Id.* (citation omitted). Plaintiff here can point to no such other evidence.  The Court finds, therefore, that this fifth *Polaroid* factor strongly favors Defendants.

The sixth *Polaroid* factor requires the Court to inquire as to whether the defendant acted in good faith; that is, "whether the defendant adopted its mark with the

intention of capitalizing on plaintiff's reputation and
goodwill and any confusion between his and the senior
user's product." *Lang,* 949 F.2d at 583. In this case,
Defendants deliberately pointed to their work with
Plaintiff as an example of a successful consulting project
and to promote their services.  While Defendants contend
that they had permission to do so pursuant to a provision
of the April 1998 agreement between the two parties, the
Court finds that Plaintiffs have introduced sufficient
evidence to create an issue of fact as to whether
Defendants acted in good faith in using the Alleged Mark on
their website, particularly in light of the fact that the
Alleged Mark was linked to a page that included disparaging
statements about Plaintiff regardless of the fact that
those statements did not specifically identify Plaintiff.
Accordingly, this sixth factor balances in Plaintiff's
favor.

The seventh *Polaroid* factor is the quality of a
defendant's services and "whether the senior user's
reputation could be jeopardized by virtue of the fact that
the junior user's product is of inferior quality." *The
Sports Authority*, 89 F.3d at 965 (citing *Arrow Fastener Co.
v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995)).
Plaintiff has introduced evidence to show that it was

dissatisfied with Defendants' services and thereby created
an issue of fact as to whether it would be injured by being
associated with Defendants.  This factor therefore also
balances in Plaintiff's favor.

The eighth and final *Polaroid* factor requires the
Court to looks to the sophistication level of the relevant
consumer group "[b]ecause likelihood of confusion 'must be
assessed by examining the level of sophistication of the
relevant purchasers' of the plaintiff's and defendant's
services." *The Sports Authority*, 89 F.3d at 965 (*citing
W.W.W. Pharmaceutical*, 984 F.2d at 575).  The Court has
been presented with no evidence regarding either
Plaintiff's consumer group or, to the extent that they are
separate, Defendants' consumer group.  In light of
Plaintiff's failure to meet its burden of producing such
evidence, the Court finds that the eighth factor weighs in
Defendants' favor.

In reviewing these eight *Polaroid* factors, the Court
finds that five factors balance in Defendants' favor and
three weigh in Plaintiff's favor.  While recognizing that
summary judgment should be granted only "where 'the
undisputed evidence would lead only to one conclusion'
under the *Polaroid* test," *The Sports Authority*, 89 F.3d at
960 (citation omitted), the Court finds that Defendants

have met their burden of showing that they are entitled to summary judgment here.  There is no issue of fact as to whether Plaintiff can satisfy its burden with respect to five of the eight *Polaroid* factors, and, accordingly, there is no issue of fact as to the outcome of applying that test.  In light of that inevitable outcome, Defendants are entitled to summary judgment as to Plaintiff's claims for false endorsement under Section 43(a) of the Lanham Act.

**3. Injunctive Relief for the Lanham Act Claims**

Even if the Court were to conclude that Plaintiff had satisfied its burden of creating an issue of material fact with respect for its Lanham Act claims, Defendants' motion for summary judgment would nonetheless be granted to the extent that Plaintiff seeks injunctive relief because Plaintiff has not shown an issue of fact as to whether she is entitled to such relief.  Defendants have removed all representations of Plaintiff's Alleged Mark from their website, thereby voluntarily terminating the allegedly offending practice, *see Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.*, 668 F.2d 699, 703 (2d Cir. 1982). Plaintiff is therefore not entitled to injunctive relief with respect to the Alleged Mark.

While the Alleged Disparaging Remarks remain, there is no longer any link connecting them to the Alleged Mark or

to Plaintiff.  Plaintiff has produced no evidence to show
that, without the Alleged Mark, viewers of Defendants'
website would be likely to believe that its references to a
"direct marketing media company" in the Alleged Disparaging
Remarks referred to Plaintiff.  Plaintiff thus has made no
showing that it can meet its burden of proving "likelihood
that purchasers of the product may be misled in the
future." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286,
299 (2d Cir. 1999) (quoting *Burndy Corp. v. Teledyne
Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984)).

Defendants are thus entitled to summary judgment with
respect to Plaintiff's request for injunctive relief.


**C. Attorneys' Fees and Related Costs**

Both Plaintiff and Defendants seek attorneys' fees and
related costs under Section 35(a) of the Lanham Act, and
Plaintiff also seeks reimbursement of such fees and costs
"under the indemnification provisions in the agreements
between the parties."  (Pl.'s Mem. in Supp. 2.)

Section 35(a) of the Lanham Act provides that "[t]he
court *in exceptional cases* may award reasonable attorney
fees to the prevailing party."  15 U.S.C. § 1117(a)
(emphasis added).  Defendants, the prevailing party here,
argue that this case is exceptional because Plaintiff has

failed to present any evidence in support of its Lanham Act claim.  (Defs.' Mem. in Opp. 17.)  *See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336 (11th Cir. 2001) (granting attorneys' fees pursuant to Section 35(a) of the Lanham Act when the plaintiff had "failed to present a 'scintilla of evidence'" in support of its Lanham Act claim).

The Court has found that Plaintiff has failed to present sufficient evidence to meet its burden of creating an issue of fact as to several components of its Lanham Act claim, but this is not to say that Plaintiff has failed to introduce any scintilla of evidence in support of that claim.  This case is not of an exceptional nature, and the Court finds that Defendants are not entitled to attorneys' fees and related costs under Section 35(a) of the Lanham Act.  Defendants' motion for summary judgment as to such costs is DENIED.

Plaintiff has likewise failed to show that it is entitled to attorney's fees "under the indemnification provisions in the agreements between the parties."  (Pl.'s Mem. in Supp. 2.) The indemnification provision of both the February and April 1998 agreements states that Hallmark is entitled to indemnification "against all losses, claims, damages, liabilities, costs or expenses . . . arising out

of Hallmark's entering into or performing services under
this Agreement, or arising out of any matter referred to in
this Agreement."  (J.A. 66, 300.)  This litigation does not
arise out of either Plaintiff's performance under the
agreements or any other matter referenced in the agreement.
The indemnification provision therefore does not apply to
this litigation, and Plaintiff's request for attorney's
fees and costs is DENIED.

**D. Plaintiff's Remaining State Law Claims**

In addition to Plaintiff's Lanham Act Claim, which is
the sole federal claim in this action, Plaintiff also
alleges violations of state law, including unfair
competition, breach of fiduciary duty, libel *per se*, and
conversion.  Because the parties to this action are all
residents of the same state, these remaining claims are
before the court solely on the basis of supplemental
jurisdiction.  *See* 28 U.S.C. § 1367.

The governing statute provides that "district courts
may decline to exercise supplemental jurisdiction over the
other claims if the district court has dismissed all claims
over which it has original jurisdiction."  28 U.S.C. §
1367(c)(3).  As has been recognized by courts in this
district, "the law of this circuit generally favors

declining to exercise pendant jurisdiction where the federal claims have been disposed of on summary judgment." *Young v. Halle Housing Associates, L.P.*, 152 F.Supp.2d 355, 366 (S.D.N.Y. 2001) (citations omitted).

Here, Plaintiff's sole federal claim has been dismissed and the Court sees no compelling reason to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  These state law claims all relate to Defendants' alleged possession of copies of documents and other information belonging to Plaintiff, and thus arise out of events unrelated to those that gave rise to Plaintiff's federal Lanham Act claim.  Because they involve only state law issues and are, in fact, only tangentially related to a federal claim that has now been dismissed, this Court declines to exercise jurisdiction over Plaintiff's remaining state law claims.


### III. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendant's motion for summary judgment on Plaintiff's Lanham Act Claim is GRANTED; both parties' requests for

attorneys' fees and related costs are DENIED; and

Plaintiff's remaining state law claims are DISMISSED.

The Clerk is directed to enter judgment dismissing

this action.


SO ORDERED.


Dated: July 9, 2007

_____
Lawrence M. McKenna
U.S.D.J.

24